Don Ray OWENS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14289.

Court of Criminal Appeals of Oklahoma.

Feb. 21, 1968.

Rehearing Denied March 18, 1968.

Ben N. Hatcher and Bob Lake Grove, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Penn Lerblance, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge:

Don Ray Owens, hereinafter referred to as defendant, was charged with Joe Cortez, Jr., by Information filed May 11, 1966, with the crime of Grand Larceny in the District Court of Oklahoma County, Oklahoma. The specification was that the defendant and Cortez, acting conjointly and together, did on March 29, 1966, wilfully and unlawfully steal and carry away by stealth and fraud from the possession of Southwestern Bell Telephone Company, approximately 45 pounds of non-insulated copper wire valued in excess of $20.00.

Cortez pleaded guilty and was sentenced to four years in the penitentiary.

Defendant's plea of not guilty was withdrawn and a Motion to Quash and Set Aside the Information was filed. Defendant's Application to Hear Evidence on said Motion was denied and the Motion itself was overruled.

Defendant then went to trial on a plea of not guilty on October 25, 1966, at which time he was represented by counsel of his own choosing.

On the trial the State introduced the testimony of 14 witnesses which established these facts: A repair crew from the Southwestern Bell Telephone Company discovered non-insulated 104 copper wire missing from their poles at about 1:45 A.M., March 29, 1966. These were long-distance toll lines. Defendant and Cortez were stopped by officers about 2:05 A.M., the same morning in Edmond, for a faulty taillight. Cortez was the driver of the car and was given a warning ticket; however, both Cortez and the defendant were observed wearing white levi-type pants and there was a black substance on the inside part of the legs of their pants. They were arrested for loitering and placed in the City jail. A search warrant was obtained, the car was searched and non-insulated 104 copper wiring was found in the car. This wire was identified as having telephone company splicing and such wire is never sold on the open market but remains only in the telephone company's use. The missing wire was identified as being about $60.00 in value. An F.B.I. Special Agent assigned to the F.B.I., Washington, D.C., Laboratory,

testified that the wire found in the car was cut with the same instrument that cut the wire from the Southwestern Bell Telephone lines.

The defendant offered no evidence or witnesses.

The jury found the defendant guilty of Grand Larceny After Former Conviction of a Felony, and fixed his punishment at one year in the penitentiary. Judgment and sentence was entered on November 4, 1966, Motion for New Trial was overruled and a timely appeal has been filed in this Court.

 Defendant contends that the trial court erred in overruling the Motion to Quash and Set Aside the Information, and compounded this error by refusing to allow the defendant to offer testimony as to what had occurred at the preliminary hearing in support of this Motion. We are of the opinion that the trial court did not err in refusing to allow the defendant to call all the witnesses who testified at the preliminary hearing and in effect conduct a new preliminary hearing. The proper method of questioning the sufficiency of evidence offered at a preliminary hearing is to preserve the testimony presented before the magistrate, have the same recorded in the transcript of the proceeding, duly certified by the reporter, and offer such transcript as the best evidence of the testimony taken at the preliminary hearing.

 It is further contended by defendant that the evidence was wholly insufficient to support the verdict of the jury and that the trial court erred when, at the close of the State's evidence, he overruled the defendant's Demurrer and failed to direct the jury to acquit the defendant. In support of this contention the defendant cites many authorities, but relies principally upon Carrico v. State, 160 Okl.Cr. 118, 180 P. 870. His position is succinctly stated in his brief in the following language:

"The facts in this case are exactly parallel with those in the case at Bar. Carrico and Moore were charged jointly of unlawfully conveying intoxicating liquor. Carrico demanded a separate trial where he was convicted of crime and from judgment and sentence thereon he appealed to this court that the trial court erred in not advising the jury to acquit him because there was no evidence to establish his guilt or to connect him with the crime charged. This court reversed his conviction based on the following facts which were held not to be sufficient to connect him with the crime. The officers stopped Moore and Carrico in an automobile traveling along 23rd Street in Oklahoma City, searched it and found 40 quarts of whiskey and removed it from the rear tonneau of the car, that Moore was driving the car and Carrico was sitting in the front seat of the car beside Moore. They placed both defendants under arrest and put them in jail, the defendant, Carrico made no statement after his arrest. The whiskey seized was identified and admitted in evidence. Another witness testified at the time they arrested both defendants that Carrico was sitting in automobile beside Moore and that Moore was driving the car and Carrico was riding in it and Moore claimed the whiskey. Moore pled guilty to the crime charged, as against him. The court in reversing Carrico's conviction stated:

'The only theory upon which Carrico can be convicted of unlawfully conveying this liquor is that he aided and abetted the defendant Moore in its conveyance. The proof on the part of the state shows that Moore was the person to whom the automobile belonged, and was driving same at the time of the arrest. There is nothing in the testimony of the states witnesses to show that Carrico in any way actively aided, abetted, or encouraged Moore in the unlawful conveyance of this liquor. At most, the evidence only tends to prove that, after Carrico learned that Moore was engaged in the unlawful conveyance of intoxicating liquor, he (Carrico) silently acquiesced therein.

Mere acquiescence is not sufficient to establish guilt. It must be shown either that the defendant committed the offense, or that he aided, abetted, or assisted in its commission, or that he procured it to be done.

A careful examination of all the evidence in this case convinces the court that the same is wholly insufficient to sustain the conviction and that it would be a miscarriage of justice to permit this conviction to stand in view of the fact that there is no evidence of an incriminating nature sufficient to warrant it. * * *' "

The State, while conceding that the authorities relied on by the defendant, correctly state the law as applied to the particular facts that gave rise to them, argues that the circumstantial evidence in the instant case is sufficient to support the verdict of the jury.

■ In the instant case (a) the defendants were apprehended in the vicinity of the crime a short time after its commission; (b) the copper wire had been stolen from telephone poles which would have necessitated the thieves climbing the poles to cut the wire; (c) telephone poles are coated with a creosote compound which adheres to the clothing of persons coming in contact with it. The defendant, when first observed by the arresting officer in the automobile driven by his co-defendant, had a black substance on the inside part of the legs of his pants, from which the jury could reasonably infer that the defendant had come into contact with a black substance such as a telephone pole and had gripped the same with his legs. (d) The co-defendant had the key to the trunk from which the stolen copper wire was recovered, but the key would not open the trunk. The trunk could have as easily been opened by the defendant as by the co-defendant, since the wire which opened the trunk was accessible from the back seat of the automobile. (e) In order to remove the copper wire it was necessary for the thief, or thieves, to climb more than one telephone pole. From this fact it might reasonably have been inferred that the theft was the effort of more than one person; and (f) not one scintilla of evidence was offered on behalf of the defendant tending to any degree to negate this circumstantial evidence against him. This Court held in the case of Stumblingbear v. State, Okl.Cr., 364 P.2d 1115, and cited with approval in Sasser v. State, Okl.Cr., 414 P.2d 714:

"Where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility, and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence."

■■ Defendant further contends that the trial court erred when it failed to give an instruction requested by the defendant. Defendant's Requested Instruction is as follows:

"You are instructed that before you can find the defendant guilty of the offense charged of Grand Larceny, you must find from the evidence introduced in the case that this defendant was connected in some way with the actual commission of the crime itself, and in this connection you are instructed that it is not sufficient if the evidence only connects this defendant with some other person who might have committed the crime charged of Grand Larceny, and you are instructed that unless you find that this defendant was in some manner actually connected with, or took part in the actual commission of the offense of Grand Larceny, then and in that event, you should acquit him."

With this contention we cannot agree, for in reading all of the court's instructions, it becomes apparent that the relevant law was completely and accurately stated. We feel that Instruction No. 4, given by the

court, covers defendant's requested instruction above, which reads as follows:

"You are instructed that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission are principals and are punishable under the law as such.

You are instructed that the term 'concerned in the commission of a crime' means that one must either commit the crime himself, procure it to be done, or aid and abet in its commission. A mere mental assent of acquiescence in the commission of a crime by one who did not procure or advise its commission, who takes no part therein, gives no counsel or word of encouragement to the perpetrator of the crime, does not in law constitute such a person a participant in the crime.

You are instructed that 'aid and abet' and 'aiding and abetting,' as used in these instructions, means to assist and supplement the efforts of another in the commission of a crime, with knowledge of the wrongful purpose of such other person, giving counsel and encouragement to such other person in the commission of such crime."

This instruction, when taken together with the other instructions, correctly advise the jury as to the law applicable in the instant case.

In Cawley v. State, 96 Okl.Cr. 53, 248 P.2d 273, where a larceny conviction was upheld, this Court held:

"It is axiomatic that instructions must be considered as a whole, and when so considered together, if they fairly and correctly state the law applicable to the case they will be sufficient. Lamb v. State, 70 Okl.Cr. 236, 105 P.2d 799.

\* \* \* \* \* \*

It has been repeatedly held that it is not error to refuse requested instructions which are proper statements of law when such requested instructions are substantially covered by the instructions given by the court."

For all of the reasons above set forth, the judgment and sentence appealed from is affirmed.

BRETT, J., concurs.