Coyt Louis MANGUM, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–153.

Court of Criminal Appeals of Oklahoma.

Oct. 22, 1975.

Rehearing Denied Dec. 18, 1975.

Sam H. Johnson, Rhoads & Johnson, Inc., Lawton, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David O'Brien, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Coyt Louis Mangum, hereinafter referred to as defendant, was charged, tried before a jury and convicted of the crime of Unlawful Distribution of a Controlled Dangerous Substance in the District Court of Comanche County. Punishment was assessed at a fine of $500.00 and a term of two (2) years under the direction and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in conformance with said verdict the defendant has perfected his timely appeal.

On behalf of the State Detective Dean Nowe of the Lawton Police Department testified that on September 28, 1973, he and an informant, Kenneth McGinty, went to an apartment in Lawton. At first Nowe waited in the car while McGinty went inside. In a few moments McGinty came out and motioned for Nowe to come in. Entering the apartment, Nowe observed the defendant sitting at a table in the process of transferring a white powdery substance from a glass bowl to small squares of folded aluminum foil. The defendant greeted him and told him that the substance was "good THC" and that he had just brought the drug back from Norman the previous day. Nowe then asked the defendant how much he would sell, to which the defendant replied that he had been selling the "stuff" for a long time and others were expecting it, but that he would sell "fifty hits." The defendant then placed a quantity of the substance in a plastic bag, weighed it, stated that it contained eleven grams, would make eighty hits and that the price would be $135.00. Nowe took the money from his wallet, counted it, and placed it in the center of the table and took the plastic bag. The defendant then picked up the $135.00 and put it on the table in front of him. At this point the defendant asked if he would like to "hit some up" before they left. The defendant then placed some of the substance and some water in a spoon, heated it, and

drew the liquid solution into a syringe which had been lying on the table and asked who wanted to go first. McGinty declined and Nowe rolled up his sleeve to receive the shot. When the defendant approached him with syringe in hand, Nowe identified himself and placed the defendant under arrest.

On cross-examination, Nowe testified that McGinty had been the subject of a previous marihuana investigation and that, pursuant to an agreement with the police department, McGinty had agreed to furnish information on drug traffic. Nowe further testified that McGinty told him that the defendant had told him prior to September 28 that he had THC and was in the process of breaking it down and putting it into papers.

Ronald Clodfelter, a chemist previously employed by the Oklahoma State Bureau of Investigation, then testified that he had conducted tests on the substance and that it was his conclusion that the white powdery substance was Phencyclidine. The State then rested.

The first two witnesses for the defense were Lawton Police Officers Jim Ingram and Carl Morrow. Ingram testified that he had met McGinty once but did not have a file on him. Morrow testifed that he was the supervisor of the Narcotics Division of the Lawton Police Department, that he had met McGinty on two occasions and that he had been involved in getting McGinty to furnish information on the drug traffic in Lawton. Four witnesses than testifed that the defendant was of good character. One witness on cross-examination stated that the defendant was trained in the administration of shots from syringes.

The defendant then testified that he was nineteen on the date of the incident, was a medic in the U.S. Army stationed in Lawton and did not live in the apartment in which he was arrested. He further testified that he had met McGinty on the day previous to his arrest and that McGinty had given him a substance McGinty claimed to be mescaline. He stated that McGinty had asked him if he had any drugs for sale and that if he could get some drugs, he (McGinty) would get a good price for them. The defendant stated that he then received a call from an unidentified man in the MP detachment who said that he had some drugs for sale and asked the defendant if he knew how he could get rid of them. The defendant testified that prior to this incident he had not had any drugs or sold any drugs.

On cross-examination, the defendant denied having weighed or packaged any of the substance or having filled the syringe. He testified that he had picked up the drug and brought it to the apartment, but that he was to sell only the eleven grams for $135.00 and the rest of the drug was to remain in the apartment until the unidentified MP came to pick it up. He was unable to say what time the pickup was to be made nor what was to be done with the rest of the drug. He further testified that it was his intent to sell the eleven grams and that he expected to make a profit of $15.00 to $20.00 on the sale.

The defendant's first assignment of error urges that the examining magistrate and the trial court erred in failing to dismiss charges or sustain the defendant's demurrer to the evidence and motion for a directed verdict for the reason that charges filed against the defendant were a result of a scheme of entrapment. In support of his contention the defendant argues that from a reading of the transcript of the preliminary hearing and the trial, it was apparent that the defendant did not have a predisposition to sell narcotics, citing *Striplin v. State*, Okl.Cr., 499 P.2d 446.

■ In *Striplin* the uncontradicted testimony was that the police informant provided drugs to be sold and asked the defendant to sell same to an undercover agent. After the sale was made, the defendant was arrested. The instant case is clearly distinguishable. Nowe testified that the defendant stated that he had been selling the "stuff" for a long time but that

he would sell "fifty hits". The defendant admitted during his testimony that he intended to make the sale and hoped to make a profit. We believe this sufficiently indicates the defendant's predisposition to make distribution of a controlled dangerous substance. *Anderson v. State,* Okl.Cr., 523 P.2d 1099.

■ The defendant further argues that the informer McGinty unlawfully induced the defendant to make the sale by giving him mescaline on the day prior to the arrest. Although it is our opinion that it is improper for a law enforcement agent to distribute a drug, we do not feel that under the particular fact situation of this case, the action of the informant induced the defendant to perpetrate a crime which he otherwise would not have committed. It should be noted that the testimony of the informant McGinty, as it appears in the transcript of the preliminary hearing where McGinty testified as a defense witness, does not indicate that any drugs were exchanged during the prior contacts between McGinty and the defendant. ·It is therefore our opinion that entrapment was not established as a matter of law in the instant case. The issue of entrapment was presented to the jury through the trial court's instructions. *Kissick v. State,* Okl. Cr., 504 P.2d 889. The jury resolved the issue adversely to the defendant. No abuse of discretion on the part of the trial court is indicated by the record, and defendant's first proposition is without merit.

■ The defendant's second assignment of error contends that the trial court erred in not granting defendant's motion for a continuance in order to compel the presence of undercover agent McGinty. The record reflects that the defendant had been granted a first continuance on April 18, 1974, and was advised by the trial court that the case would not be stricken from any further jury docket unless the witness was in custody. On June 4, 1974, a Certificate to Secure Attendance of Out of State Witness was obtained from the trial court under the provisons of 22 O.S.1971, §§

722–727. However, the certificate stated that the presence of McGinty was required on June 17 and June 18, 1974. The record is silent with reference to any further effort of the defendant to compel the attendance of McGinty until an oral motion was made on the date of trial, June 26, 1974. This Court has consistently held that a motion for continuance is addressed to the sound discretion of the trial court whose denial of such motion will not be disturbed on appeal unless there is a clear showing of an abuse of discretion. *Nubine v. State,* Okl.Cr., 506 P.2d 952.

■ The record before us shows that at the preliminary hearing the defendant called McGinty as a defense witness and questioned him thoroughly concerning all prior contacts with the defendant and the steps he took to "set up the buy." The defendant had the transcript of the preliminary hearing at trial, and the trial court allowed him great latitude in cross-examining from it. An examination of the record and the transcript of the preliminary hearing indicates that the jury had before it essentially all of the testimony given by McGinty as a defense witness at the preliminary hearing. The presence of McGinty would have added little. It is therefore our opinion that the trial court did not abuse its discretion in overruling the defendant's oral motion for a continuance presented on the day of trial.

The defendant's last assignment of error challenges the constitutionality of 63 O.S. 1971, § 2–401(B)(2). This Court has heretofore held that the statute complained of is constitutional. *Davis v. State,* Okl.Cr., 521 P.2d 422 and *Black v. State,* Okl.Cr., 509 P.2d 941.

■ However, the question of the constitutionality of said statute has become moot because of the recent enactment of 63 O.S.Supp. 1975, § 2–401 which retroactively amended said statute prohibiting suspended sentences, deferred sentences or probation "except where the conviction is for a first offense." The trial court now

has authority to consider the defendant for a deferred or suspended sentence and the defendant may seek relief under the amendment as this appears to be his first conviction for violation of that statute. See our recent decision of *Jones v. State,* Okl.Cr., 541 P.2d 219 (1975). The constitutionality of the recent amendment of said statute has been upheld by this Court in *Draughn v. State,* Okl.Cr., 539 P.2d 1389 (1975).

For all the reasons set out above, it is our opinion that the record is free of any error which would justify modification or reversal. No substantial right of the defendant was prejudiced, and the judgment and sentence appealed from should be and the same is hereby affirmed.

BRETT, P. J., and BUSSEY, J., concur.